**Maurice W. LICHTMAN, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,
Respondent.**

**Appeal No. 85–612.**

United States Court of Appeals,
Federal Circuit.

March 6, 1986.

August G. Carloni, Los Angeles, Cal., argued, for petitioner.

Carol N. Park, Dept. of Justice, Washington, D.C., argued, for respondent. On the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen and Mary Mitchelson, Attys., Commercial Litigation Branch.

Before DAVIS, Circuit Judge, MILLER, Senior Circuit Judge, and NEWMAN, Circuit Judge.

DAVIS, Circuit Judge.

Petitioner Maurice Lichtman appeals from the decision of the Merit Systems Protection Board (MSPB or Board), 22 M.S. P.R. 654, sustaining the determination of the Office of Personnel Management (OPM) that petitioner is barred under 5 U.S.C. § 8337(f) from receiving retroactive retirement annuity benefits for a period during which he received compensation benefits under the Federal Employees Compensation Act (FECA). We reverse with directions, and remand.

## I.

Lichtman was employed by the U.S. Postal Service (and its predecessor) for a period of thirty-one years and five months. He sustained an on-the-job injury and on February 4, 1972 commenced receiving compensation benefits under the FECA—administered by the Office of Workman's Compensation Program (OWCP). In June 1972, Lichtman applied for a civil service retirement (CSR) annuity based on age and years of service. Although the annuity was granted, Lichtman was advised that he could not receive periodic annuity payments and periodic FECA benefits at the same time because such a concurrent receipt was prohibited by 5 U.S.C. § 8337(f).[1]

In September 1972 Lichtman applied to OWCP for a lump-sum settlement of his FECA benefits under 5 U.S.C. § 8135. Lichtman believed that, after receiving a lump-sum FECA payment, he would then be entitled to receive periodic annuity benefits. OWCP denied his request pursuant to 5 U.S.C. § 8135(a)(3)[2] on the basis that a lump-sum commutation was not in Lichtman's best interest. This conclusion was based upon OWCP's mistake of law that 5 U.S.C. § 8116(a) prohibits receipt of FECA benefits and civil service retirement annuity benefits by the same person at any time.[3]

OWCP maintained this position for a period of about eight years. Lichtman finally obtained an appealable ruling on the matter in 1980, and was then granted a hearing on April 27, 1981. He argued that the prohibition against dual benefits found in 5 U.S.C. §§ 8116 and 8337(f) applied only to a con-

---

**1.** 5 U.S.C. § 8337(f) provides that "an individual is not entitled to receive an annuity under this subchapter [Subchapter III—Civil Service Retirement] and compensation for injury or disability to himself under subchapter I of chapter 81 of this title [Compensation for Work Injuries] covering the same period of time.... Neither this provision nor any provision of subchapter I of chapter 81 of this title denies to an individual an annuity accruing to him under this subchapter on account of service performed by him...."

**2.** 5 U.S.C. § 8135(a)(3) provides, in part, that "the liability of the United States for compensa-

tion ... of a permanent total or permanent partial disability may be discharged by a lump-sum payment ... if the Secretary of Labor determines it is for the best interest of the beneficiary."

**3.** 5 U.S.C. § 8116(a), in pertinent parts, prohibits a federal employee who is receiving FECA benefits, or who has been paid a lump-sum commutation thereof, from receiving salary, pay or renumeration of any type from the Government except, *inter alia*, in return for services actually performed or retired or retirement pay. See 5 U.S.C. § 8116(a)(1) and (4).

current receipt of periodic benefits from both sources or when the basis for the retirement and FECA benefits was the same disability. In reply to an OWCP request for clarification on the application of these statutory provisions, OPM affirmed Lichtman's entitlement to the retirement annuity if he was awarded a lump-sum computation of periodic FECA benefits.[4] Based on this information, the evidence at the hearing, and a finding that it was in Lichtman's best interest to receive a lump-sum FECA payment, OWCP reversed its prior decisions and ordered a lump-sum settlement of Lichtman's FECA benefits.[5]

Because OWCP's prior determinations were erroneous, Lichtman requested that OPM grant him annuity benefits retroactive to his first request for a lump-sum compensation settlement in September 1972. OPM denied this request. In response to a subsequent request for reconsideration, OPM affirmed its initial decision. Lichtman appealed to the MSPB.

Although admitting that Lichtman presented a sympathetic case, the presiding official affirmed OPM's decision. The presiding official found that Lichtman had not received ten years of retirement benefits to which he would have been entitled had the lump-sum settlement occurred, as it should have, in 1972. She repeatedly characterized as "erroneous" the refusal of OWCP to grant a lump-sum settlement in 1972, and also repeatedly said that Lichtman should have been given such a lump-sum settlement in that year. However, finding the controlling issue to be one of statutory entitlement, the presiding official held that

> [a]lthough 5 U.S.C. § 8116(a) does not prevent double payments here because the applications were not based upon the same disability, 5 U.S.C. § 8337 does prohibit payment of retirement benefits at the same time periodic FECA benefits are paid. ... [T]he fact remains that

appellant did collect monthly FECA payments for ten years. Consequently, during each of those years he was not statutorily entitled to receive annuity payments.

A petition for full Board review was denied.

On appeal to us, Lichtman contends that the commutation of his FECA benefits should be considered to be effective as of the date of his initial request for commutation, September 1972, rather than the actual date of commutation, January 1982, because of OWCP's mistake of law and unconscionable delays in processing his application. Lichtman urges that OPM has the authority, as well as the responsibility, to correct this injustice which resulted in his statutory ineligibility for the ten-year period.

OPM asserts that its decision is entitled to judicial deference and should be sustained. The agency maintains that it correctly concluded (for the period 1972–1982) that 5 U.S.C. § 8337(f) barred Lichtman's concurrent receipt of periodic retirement benefits and FECA benefits. Further, OPM urges that it has no authority to waive this statutory restriction or to grant CSR annuity benefits back to 1972 on the basis of the equities of Lichtman's case.

## II.

OPM and MSPB base their views in this case on 5 U.S.C. § 8337(f) and (g). These subsections provide in relevant part:

> (f) An individual is not entitled to receive an annuity under this subchapter [dealing with civil service retirement] and compensation for injury or disability to himself under subchapter I of chapter 81 of this title [dealing with compensation for work injuries] covering the same period of time. This provision does not bar the right of a claimant to the greater

---

4. See the letter of Craig Pettibone, dated October 7, 1981, to Ralph M. Hartman, Director of OWCP, set forth in the Petitioner's Appendix at page A–5.

5. The OWCP hearing representative "ordered that the claimant be paid compensation at the periodic rate through January 28, 1982." The lump-sum commutation payment was made on February 28, 1982 and commuted all future FECA payments due after January 28, 1982.

benefit conferred by either subchapter for any part of the same period of time. Neither this provision nor any provision of subchapter I of chapter 81 of this title denies to an individual an annuity accruing to him under this subchapter on account of service performed by him, or denies any concurrent benefit to him under subchapter I of chapter 81 of this title on account of the death of another individual.

(g) The right of an individual entitled to an annuity under this subchapter is not affected because he has received a lump-sum payment for compensation under section 8135 of this title. However, if the annuity is payable on account of the same disability for which compensation under section 8135 of this title has been paid, so much of the compensation as has been paid for a period extended beyond the date the annuity becomes effective, as determined by the Department of Labor, shall be refunded to that Department to be covered into the Employees' Compensation Fund.

The bare text of these provisions is quite opaque as to whether or not they bar the concurrent receipt of periodic benefits under workmen's compensation and also under a retirement based solely on age and longevity of service (not on disability).[6] We need not, however, decide the correctness of OPM's interpretation that such a bar generally exists. The only issue now before us is whether these statutory provisions prevent an adjusted grant of back annuity benefits to petitioner who was erroneously denied a lump-sum settlement in 1972[7] and, without any fault on his part,

had to wait for ten years before he began to receive the annuity benefits to which he was entitled. There is no doubt, under the statute and OPM's consistent interpretation, that, if Lichtman had received the lump-sum settlement he sought in 1972 (as he should have), he could then have obtained his annuity benefits, and would have had them from that time forward.

Whatever the correctness of OPM's general interpretation that concurrent periodic benefits cannot be awarded to government employees now seeking longevity retirement, the case before us presents a special situation of gross error by the Government and gross inequity for which, in our opinion, the statute does not prevent an equitable remedy.

Even on the OPM construction that there is a general barrier, we find nothing in the language of the § 8337 (set forth *supra)* that precludes proper rectification of OWCP's 1972 error. There is no provision dealing directly with these circumstances, but there are two specific parts of § 8337(f) which strongly suggest that Lichtman can receive his annuity payments back to 1972 if he does not thereby receive significantly more money *in toto* (for the years 1972–1982) than he would have obtained if OWCP had given him (as it was required under the law to do) the lump sum he sought in 1972. One sentence in subsection (f) states flatly: "This provision does not bar the right of a claimant to the greater benefit conferred by either subchapter [either the workmen's compensation legislation or the civil service retirement legislation] for any part of the same period of time." This provision gives peti-

---

**6.** The ambiguity flows from the following (among other uncertainties): Subsections (f) and (g) are both contained in § 8337 which is denominated "Disability retirement" but the first sentence of subsection (f) seems to deal with *all* civil service annuities; the third sentence of (f) declares that "Neither this provision nor any provision of subchapter I of chapter 81 of this title [compensation for work injuries] denies to an individual an annuity accruing to him under this subchapter [civil service retirement] on account of service performed by him [apparently a reference to a longevity annuity] ...”; at the same time subsection (g) explicitly

spells out that a civil service annuity (including a longevity annuity) is not affected by a lump-sum payment for a work-injury compensation. (It is noteworthy that MSPB and OPM agree that 5 U.S.C. § 8116 does not apply here.)

**7.** This record shows that the error simply came about in 1972 because OWCP incorrectly interpreted the civil service retirement legislation to prohibit the receipt of both a lump-sum compensation settlement and of a periodic civil service annuity.

tioner the right to choose annuity payments for 1972–1982 if they are greater than the total of his workmen's compensation benefits. Another sentence of subsection (f) expressly says: "Neither this provision nor any provision of subchapter 1 of chapter 81 of this title [pertaining to workmen's compensation] denies to an individual an annuity accruing to him under this subchapter [pertaining to civil service annuities] on account of service performed by him...." This seems to say outright that, at least where equity demands, subchapter (f) does not prevent receipt of a longevity annuity—the type of civil service annuity Lichtman sought and was informed that he was entitled to in 1972, did not then receive, and still seeks for 1972–1982.

Furthermore, the legislative history of 5 U.S.C. § 8337 indicates that section 8337(f) was amended in 1946 (*see* Civil Service Retirement Act of 1930, Pub.L. No. 79–557, 60 Stat. 706) specifically to permit—at least where equity requires—the concurrent receipt of a retirement annuity accruing to an individual based on services performed by that individual and of employee's compensation benefits.[8] In adopting the amendment, the Senate Committee on Civil Service cited its purpose as "permit[ting] the payment of annuities to persons entitled thereto under the Civil Service Retirement Act concurrently with death benefits...."[9] S.Rep. No. 1680, 79th Cong., 2d Sess. 1 (1946). The House Committee on Civil Service gave the broader purpose of the amending legislation as to "assure equitable treatment to persons entitled to an annuity under the Retirement Act as a result of services rendered and any concurrent benefits under the act ..." providing compensation for work injuries. H.R.Rep. No. 2430, 79th Cong., 2d Sess. 1 (1946). In the light of these purposes, we think it

clear that Congress intended to protect the equitable rights of a federal employee in a case (such as the current one) in which he was inequitably deprived of his benefits by the Government's own error. Section 8337 should be read—as it plainly can be interpreted—in that equitable fashion, not as a rigid bar to correcting the Government's error to the extent that the employee was deprived of his due.

There can be no valid reliance, in this instance, on the general principle that courts should give deference to the agency's reasonable construction of a statute (*see, e.g., Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, ——, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)); this case presents a unique situation as to which there has been no prior or consistent agency interpretation. Moreover, we do not believe that the Congress which passed the retirement legislation would have sanctioned in this case the interpretation and result OPM and MSPB espouse.

For these reasons, we hold that Lichtman is entitled to receive the excess (if any) of (1) the total amount of all periodic compensation benefits actually received by him for the period 1972 through 1982, deducted from (2) the sum of the proportional amount of the lump-sum compensation settlement, in 1972, which would have been attributed to the period covering 1972 through 1982 plus all annuity benefits accruing for that ten-year period. Our effort is to put Lichtman in the same position now as if he had received the lump-sum computation settlement plus the annuity payments, as he should have, in 1972. OPM and MSPB should so determine petitioner's entitlement.[10] We think this will both accord with the terms of the statute and equitably rectify the OWCP's 1972 error.

### REVERSED AND REMANDED.

---

**8.** This amendment inserted the third sentence in subsection (f), beginning "Neither this provision nor any provision of subchapter I of chapter 81 of this title...."

**9.** The Senate Committee believed that the legislation should be enacted as a remedial measure to prevent a construction of § 8337(f), as it existed at that time, which denied to a widow

receiving compensation on account of the death of her husband, an annuity on her own account under the Civil Service Retirement Act. *See* S.Rep. No. 1680, 79th Cong., 2d Sess. 1–2 (1946).

**10.** Because the issue of interest has not been adequately argued to us, we leave that problem initially to OPM or MSPB.