DECISION
 

 BENNETT, Senior Circuit Judge.
 

 Gevyn Construction Corp. (Gevyn) appeals the grant of summary judgment by the United States Claims Court in
 
 Gevyn Construction Corp. v. United States,
 
 11 Cl.Ct. 203 (1986) (Tidwell, J.). The Claims Court held that Gevyn was not entitled to recover “imputed” interest on equity capital used to finance extra work on a construction contract with the government and that Gevyn’s subcontractor, Potomac Metal Products, Inc. (Potomac Metal), was not entitled to recover interest on funds allegedly borrowed to finance extra work on the same project. We affirm.
 

 OPINION
 

 The dispute in this case arose from performance by Gevyn of a fixed-price government construction contract for the rehabilitation of the Boston Veterans Hospital. The contract for over $4 million was entered into in 1963 and completed in 1967. Gevyn entered into a subcontract with Potomac Metal for certain work on the project at a price of over $1 million.
 

 In 1967 Gevyn filed a claim for extra expenses incurred due to alleged government-caused contract changes and delays. The claims were denied by the contracting officer and by the Engineer Board of Contract Appeals (ENGBCA). Gevyn then sought a review by the United States Court of Claims under the terms of the Wunder-lich Act, 41 U.S.C. §§ 321, 322.
 
 [1]
 
 The Court of Claims granted summary judgment to the contractor in part, to the government in part, and remanded the case to the ENGBCA to determine the amount that Gevyn was entitled to recover.
 
 Gevyn Construction Corp.,
 
 219 Ct.Cl. 677 (1979).
 

 An equitable adjustment of $1,150,000 ($401,065 to Gevyn and $748,935 to Potomac Metal) was thereafter reached. The final contract payment was made in 1981. In the equitable adjustment, Gevyn reserved the right to pursue claims on behalf of itself and the subcontractor for the cost of financing the extra work, labor, services, and equipment included in the adjustment. Again, the contracting officer and the ENGBCA denied relief and an appeal was made to the Claims Court, which also denied relief, as noted. It is the latter decision which is now before us on appeal.
 

 Two issues are presented: (1) whether the Claims Court rightly sustained the ENGBCA holding that the appellant may not recover “imputed” interest on equity capital said to have been used to finance government-ordered extra work, and (2) whether the Claims Court correctly sustained the ENGBCA determination that appellant had not proved the right to recover interest for and on behalf of Potomac Metal for its borrowings allegedly made to finance extra work.
 

 Gevyn’s Claim
 

 Gevyn would assign a value in the nature of imputed interest to the use of its equity capital used to fund changed work. It seeks interest on the portion of the equitable settlement it received at the rate of 6 percent for the period from 1965 to 1981. However, the ENGBCA found that Gevyn at all times had possession of either government funds or subcontractor funds to finance its work, and that there was no indication in the record that Gevyn ever had to use its own equity capital under this contract. Appellant has not met its burden to overcome this finding by showing that there is not substantial evidence to support it. 41 U.S.C. § 321 (1982);
 
 Koppers Co. v. United States,
 
 405 F.2d 554, 556-559, 186 Ct.Cl. 142 (1968).
 

 In the instant case, Gevyn did not allege that it had to borrow to finance the changed work and the ENGBCA found that Gevyn had sufficient funds to finance the
 
 *754
 
 changed work and did not borrow for it. Even assuming, arguendo, that Gevyn had used equity capital to fund some or all of the changed work, 28 U.S.C. § 2516(a) (1982) generally prohibits the award of interest against the federal government, except where allowed by contract or statute. It has been held that section 2516(a) does not bar an interest award as part of an equitable adjustment under a fixed-price contract if the contractor has actually paid interest because of the government’s delay in payment.
 
 Framlau Corp. v. United States,
 
 568 F.2d 687, 694, 215 Ct.Cl. 185 (1977);
 
 Bell v. United States,
 
 404 F.2d 975, 984, 186 Ct.Cl. 189 (1968). However, those decisions of one of our predecessor courts, the Court of Claims,
 
 [2]
 
 recognized a distinction between the use of equity capital and debt capital in funding changed work. The Court of Claims in
 
 Framlau
 
 found the distinction for recovery of interest on the use of debt capital versus recovery on the use of equity capital to be supportable on the grounds that “the costs to the contractor of borrowing capital [are] clearly determinable, while the value to him of the use of equity capital is not so readily ascertainable.” 568 F.2d at 695;
 
 see also Dravo Corp. v. United States,
 
 594 F.2d 842, 849-50, 219 Ct.Cl. 416 (1979);
 
 Singer Co. v. United States,
 
 568 F.2d 695, 718-20, 215 Ct.Cl. 281 (1977).
 

 Appellant tries to characterize the contrary holdings of the Court of Claims as dicta and further attempts to distinguish the outcome in each case as resulting from a failure of proof. We do not agree with appellant’s casting of our precedent and we find the authorities relied upon by appellant to be inapposite. Further, the Supreme Court recently reiterated that “ ‘the immunity of the United States from liability for interest is not to be waived by policy arguments.’ ”
 
 Library of Congress v. Shaw,
 
 478 U.S. 310, 106 S.Ct. 2957, 2965, 92 L.Ed.2d 250 (1986) (quoting
 
 United States v. New York Rayon Importing Co.,
 
 329 U.S. 654, 663, 67 S.Ct. 601, 606, 91 L.Ed. 577 (1947));
 
 see also Economy Plumbing & Heating Co. v. United States,
 
 470 F.2d 585, 594, 200 Ct.Cl. 31 (1972) (interest cannot be collected from the government on the basis of equity and justice).
 

 In
 
 Monroe M. Tapper & Associates v. United States,
 
 611 F.2d 354, 360, 222 Ct.Cl. 34 (1979), the Court of Claims noted that “the prohibition against payment of interest may have harsh results” under the facts of certain cases. The court in
 
 Tapper
 
 also observed that:
 

 This unfairness was eliminated in most situations long ago by changes in procurement regulations and now by the Contract Disputes Act. Unfortunately, plaintiff in this case is unable to benefit from these developments and the old rule prohibiting the payment of interest on claims against the Government dictates the result here.
 

 While the time that the current case has been pending may have added to the harshness resulting from the prohibition against interest, our conclusion can be no different from that of the court in
 
 Tapper.
 
 In rejecting Gevyn’s claim for imputed interest the Claims Court adhered to binding precedent, its judgment denying the claim was correct as a matter of law, and there was no legal basis on which to disagree with the ENGBCA findings.
 

 Potomac Metal’s Claim
 

 Gevyn’s subcontractor, Potomac Metal, has sought to recover interest expense incurred on bank borrowings allegedly made necessary by the contract changes and extra work caused by the government. This would be permissible under either of two circumstances. The changed work either must be directly traced to a specific loan or a necessity for increased borrowing must be shown to have been required by extra work or delay caused by the government.
 
 Dravo Corp.,
 
 594 F.2d at 847;
 
 Singer,
 
 568 F.2d at 718-19. In this case, the tracing test was not
 
 *755
 
 put in issue before the Claims Court and appellant admits that tracing would be impossible here. It is argued, however, that the ENGBCA finding on the second test, the necessity for increased borrowing, is not supported by substantial evidence. The Claims Court did not agree.
 

 The same individuals who owned Potomac Metal also owned Potomac Iron Company (Potomac Iron). Potomac Iron borrowed $700,000 in bank funds and transferred $785,000 to Potomac Metal because of the latter’s small capitalization and lack of a credit line. The dates of the transfers closely approximated the borrowings by Potomac Iron. The ENGBCA found, however, that the need to borrow was necessitated not by contract changes but rather was due to excessive withholding of contract earnings by Gevyn from Potomac Metal. Since the necessity for any borrowing was not attributable to the government, recovery was therefore denied.
 

 The Claims Court, like the ENGBCA, gave credence to correspondence between Gevyn and Potomac Metal which indicated serious dispute concerning payments. The board considered this to be substantial evidence that Gevyn wrongfully withheld payments which, resulted in the borrowing. This is solely a finding of fact entitled to finality unless it is “fraudulent, or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.” 41 U.S.C. § 321 (1982). We have carefully examined appellant’s able brief and record references but conclude that appellant has not satisfied its burden under the statutory test of invalidating the fact-findings on the issue of the necessity for borrowing.
 

 AFFIRMED
 

 [1]
 

 . The claims are not reviewable under the Contract Disputes Act because they were not pending before the contracting officer after the effective date of the Act, March 1, 1979.
 

 [2]
 

 .
 
 The decisions of the Court of Claims are binding precedent upon this panel,
 
 South Corp. v. United States,
 
 690 F.2d 1368 (Fed.Cir.1982), and cannot be overruled except by the full court sitting in banc. Similarly, the decisions of the Court of Claims are also binding precedent on the Claims Court.