**NAB–LORD ASSOCIATES**

v.

**The UNITED STATES.**

No. 36–80.

United States Court of Claims.

June 2, 1982.

Franklin E. Tretter, New York City, atty. of record, for petitioner. McDonough Marcus Cohn & Tretter, P. C., New York City, of counsel.

Thomas W. B. Porter, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for respondent. Ray Goddard and Michael E. Gillett, U. S. Postal Service, Washington, D. C., of counsel.

Before DAVIS, NICHOLS and SMITH, Judges.

## ON APPEAL FROM THE POSTAL SERVICE BOARD OF CONTRACT APPEALS

SMITH, Judge:

In this contract appeal we are asked to decide whether the Postal Service Board of Contract Appeals (board) should be upheld in denying petitioner interest under the Contract Disputes Act [1] (act). We hold that petitioner is not entitled to such interest.

On February 25, 1975, petitioner, a joint venture combination of Nab Construction Corporation and Lord Electric Company, Inc., entered into a contract with the United States Postal Service. The contract called for petitioner to install and make alterations in a mail handling system for a New York City postal facility. From time to time, disputes arose between the parties as to the contract's requirements. Several of these disputes were brought before the board for resolution, in all instances prior to the effective date of the act. The board, at that time considering, as requested, only the question of entitlement, held on October 31, 1977, that petitioner was entitled to supplemental payments for contract adjustments on claims 318, 337, 362, and 373, and on January 23, 1978, it held similarly for petitioner on claims 190 and 347. The board remanded the claims to the contracting officer for negotiation by settlement of the amount of equitable adjustment due petitioner on each of the claims. Petitioner

---

1. Pub.L.No.95 563, 92 Stat. 2383, 41 U.S.C. §§ 601 *et seq.* (Supp. III 1979).

then presented the contracting officer with three requests for quantum relief on March 1, 1978 (claim 347—totaling $76,565), March 8, 1978 (claims 318, 337, 362, and 373—totaling $866,873), and May 15, 1978 (claim 190—totaling $27,043).[2] Each request included an item for interest, at that time grounded only upon an implied contract provision. The quantum claims were settled by agreement with the contracting officer; the March 8 claims being settled on December 15, 1978; the May 15 claim on March 28, 1979; and the March 1 claim on September 11, 1979.

In each settlement agreement, petitioner reserved the right to claim an entitlement to interest. Petitioner exercised that right by submitting claims to the contracting officer for "interest and/or loss of profit." These interest claims were filed on February 21, 1979 (for interest on the March 8, 1978, claims), on May 14, 1979 (for the May 15, 1978, claim), and on July 24, 1979 (for the March 1, 1978, claim). The contracting officer denied each of the interest claims on June 18, June 18, and August 30, 1979, respectively.

The contracting officer's final decisions on the interest claims were appealed to the board. The board, in its July 15, 1980, decision, held that petitioner was not entitled to interest under the act since petitioner did not have any "claims" under the act. The reason given by the board was that the underlying claims were "settled in negotiation without dispute."[3] Therefore, it concluded, there were, by definition, no quantum claims to which the interest claims could attach. The board later denied petitioner's motion for reconsideration.[4]

Petitioner appealed the board's decision to this court on December 22, 1980.[5]

Three issues are before us for decision. First, whether petitioner made a valid election to come under the act when it waited

**2.** The relevant history of the quantum claims at issue here is as follows:

| Claim Number | Complaint Date | Amount Demanded | Board Decision Date | CO* Settlement Amount | CO* Settlement Date |
|---|---|---|---|---|---|
| 318 | | $139,498 | 10/31/77 | | |
| 337 | | $126,314 | 10/31/77 | | |
| 362 | 4/14/77 | $125,357 | 10/31/77 | $546,590 | 12/15/78 |
| 373 | | $27,500 | 10/31/77 | | |
| 347 | 1/21/77 | $5,900 | 1/23/78 | $55,194 | 9/11/79 |
| 190 | 10/16/75 | $56,618 | 1/23/78 | $14,513 | 3/28/79 |

\* CO – contracting officer.

**3.** Postal Service Board of Contract Appeals' Opinion of July 15, 1980, at 9.

**4.** Postal Service Board of Contract Appeals' Opinion on Motion for Reconsideration of November 21, 1980.

**5.** The relevant history of the interest claims at issue here is as follows:

| Claim Number | Date Filed Claim | CO* Decision Date | Filed with Board | Filed with Court |
|---|---|---|---|---|
| 318 | 2/21/79 | 6/18/79 | 9/11/79 | 12/22/80 |
| 337 | | | (85 days after | (over 12 |
| 362 | | | CO decision | months after |
| 373 | | | date) | CO decision date) |
| 190 | 5/14/79 | 6/18/79 | 10/15/79 | 12/22/80 |
| | | | (119 days) | (Over 12 months) |
| 347 | 7/24/79 | 8/30/79 | 9/11/79 | 12/22/80 |
| | | | (12 days) | (Less than 12 months) |

\* CO – contracting officer.

until it filed its complaints with the board to make the election. We hold that it did as to claims 318, 337, 362, 373, and 347.[6] Second, whether petitioner's quantum claims were pending before the contracting officer on March 1, 1979, the effective date of the act. We hold that they were not. Third, if the quantum claims were not pending before the contracting officer on the effective date, whether petitioner is entitled to receive interest under the act on the quantum claims.[7] We hold that it is not.

■ Respondent's primary argument contends that petitioner failed to invoke the provisions of the act when petitioner delayed requesting that the act apply until it filed its complaints with the board.[8] Petitioner argues that its election under the act was proper. We hold for petitioner on this threshold issue.

As stated above, on all the claims involved in this case petitioner requested that interest be paid on the quantum settlements. When each of the quantum demands was settled, petitioner and the contracting officer agreed that petitioner would be able to reserve its interest claim. Later, the interest claims were submitted to the contracting officer and all were denied. Each time after the contracting officer made his final decision on the interest claims, he notified petitioner of the result through a "final decision letter." These letters included a paragraph which informed petitioner of his appeal rights. The paragraph stated that:

This is the final decision of the contracting officer. Decisions on disputed questions of fact and on other questions that are subject to the procedures of the Disputes Clause may be appealed in accordance with the Disputes Clause. You may elect to appeal this decision to the Postal Service Board of Contract Appeals pursuant to the Contracts and Disputes Act of 1978 [sic]. If you decide to make an appeal to the Board of Contract Appeals, written notice thereof (preferably in triplicate), must be mailed or otherwise furnished to the contracting officer within ninety days from the date you receive this decision. The notice should identify the contract by number, reference this decision, and indicate that an appeal is intended. In lieu of appealing this decision to the Board of Contract Appeals, you may bring an action directly on the claim in the United States Court of Claims. Any such action must be filed within twelve months from the date you receive this decision.

Petitioner responded in the same manner to each of these letters. Petitioner's reply read:

Reference is made to the Contracting Officer's letter * * * concerning his final decision with respect to interest on * * * [the] Claim * * * at the above project.

Please be advised that we appeal this decision in accordance with paragraph 3, Disputes, of the General Provisions. The contractor is reserving the issue as to whether the question being appealed is one of law or fact.

However, in petitioner's complaints to the board, it claimed that it was entitled to interest either under the general interest provision found in a Federal Procurement Regulation or under section 12 of the act, 41

---

**6.** Claim 190 was not appealed to the board within the 90-day period provided for in 41 U.S.C. § 606, and therefore was not "timely commenced as authorized by this [act]."

**7.** 41 U.S.C. § 611 (Supp. III 1979) provides that:

"Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92–41 (85 Stat. 97) for the Renegotiation Board."

**8.** Respondent, in its reply brief and in oral argument, withdrew all other grounds for upholding the board's decision. However, since the case turns on those other grounds, we give respondent additional baskets in which to place its eggs. While the parties, to some degree, define the issues in a case, we are obligated, to the best of our ability, to apply the law to the facts presented.

U.S.C. § 611. Petitioner later withdrew its claim that its contract invoked the general interest provision. In its opinion, the board only addressed the issue whether petitioner was entitled to interest under the act.

Our analysis of whether a contractor properly invokes the provisions of the act can be found in *Tuttle/White Constructors, Inc. v. United States.*[9]

In *Tuttle/White* we held that when a contractor is furnished, as petitioner in the present case was, with the necessary information to make a conscious election whether or not to invoke the act, and its response is such as to indicate that it wishes to proceed under the disputes clause of the contract, it has failed to elect application of the act. The present petitioner, however, did properly invoke the act when it filed its complaint with the board. A significant factor in our finding that the plaintiff in *Tuttle/White* had failed properly to elect the provisions of the act was that the plaintiff there "made no effort * * * to clarify its position * * * that it desired to proceed under the act."[10] The present petitioner did indicate its desire to proceed under the act at the time it filed its timely September 11, 1979, complaint with the board.[11] Therefore, we hold that it was proper for the board to consider the applicability of the provisions of the act to petitioner's claims.

■ We now turn to the basis upon which the board held that petitioner was not entitled to interest under the act. The board held that since petitioner and the relevant contracting officer negotiated set-tlement of the quantum amount which was due petitioner, there remained no dispute and, therefore, by definition, no "claim." We too hold, but for a different reason, that petitioner is not entitled to interest under the act. We find that on the effective date of the act, March 1, 1979, petitioner did not have *any claim pending then before the contracting officer*[12] and, therefore, the underlying claims, *with respect to which* petitioner attempts to proceed under the interest provisions of the act, themselves fail to come under the provisions of the act.

In 1977, the contracting officer's denials of petitioner's entitlement to the underlying claims were appealed to the board. The board reversed the contracting officer and held that petitioner was entitled to receive payments for certain contract adjustments and it remanded the claims to the contracting officer in order that the *amount* of the claims could be negotiated. The relevant underlying claims were, therefore, on the effective date of the act, pending before the board and not before the contracting officer.[13] The contracting officer was acting as a representative of the board when he negotiated with petitioner the amount petitioner should receive for the contract adjustments allowed by the board's favorable rulings as to entitlement. As we stated in *Tapper & Associates v. United States*, the claim is not still pending before the contracting officer after, "acting in a quasi-judicial capacity, the officer has rendered a final decision on the claim."[14]

The central issue in this case is whether a contractor may receive interest on an un-

---

**9.** *Tuttle/White Constructors, Inc. v. United States*, 228 Ct.Cl. ——, 656 F.2d 644 (1981).

**10.** *Id.*, 228 Ct.Cl. at ——, 656 F.2d at 648.

**11.** It is clear and we so hold that petitioner's attempt to bring claim 190 under the act was untimely. 41 U.S.C. § 606. *See* note 6, *supra.*

**12.** Section 16 of Pub.L.No.95–563 provides that:
"This Act [see Short Title note below] shall apply to contracts entered into one hundred twenty days after the date of enactment [Nov. 1, 1978]. Notwithstanding any provision in a contract made before the effective date of this Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter."

**13.** In fact, quantum claims 318, 337, 361, and 373, having been settled on December 15, 1978, were apparently not "pending" before anyone on the effective date of the act.

**14.** *Tapper & Assocs. v. United States*, 222 Ct.Cl. 34, 42, 611 F.2d 354, 359 (1979). Here, no "final decision" on the amounts agreed to was issued by the contracting officer, nor was any requested.

derlying quantum claim which itself cannot be brought under the act.[15] If the interest claim can exist separate from such an underlying claim, petitioner will be entitled to recover interest from the effective date of the act to the day of payment.[16]

 We find that in order for a contractor to receive interest *under the act* there must be an underlying claim for quantum which is governed by the act. This result is supported by our prior decisions. In *Tapper & Associates*, we held that the phrase "pending before the contracting officer" limits the payment of interest in the same manner that it limits direct access to this court. Therefore, just as a contractor who, within the meaning of the act, does not have a claim pending before a contracting officer on the effective date could not elect direct access to this court, petitioner cannot obtain interest on [*i.e.*, "with respect to"] claims which were on that date pending, not before the contracting officer, but rather before the board.

Our holding is also supported by the wording and interplay of section 12, 41 U.S.C. § 611, and section 16 of the act. Section 12 states that "[i]nterest *on amounts found due contractors on claims* shall be paid * * *." (Emphasis supplied.) Section 16 states that "the contractor may elect to proceed under this Act *with respect to any claim* pending then before the contracting officer or initiated thereafter." (Emphasis supplied.) It is clear that the term "claim" refers to the same legal demand in section 12 as it does in section 16. Therefore, it is also clear that in order to receive interest under the act a contractor must have a quantum claim which meets the requirements of section 16.

We conclude as a matter of law that none of petitioner's quantum claims were pending before the contracting officer on the effective date of the act. Furthermore, petitioner is not entitled to interest under

the act with respect to quantum claims which themselves fail to come under the act's provisions. Since no other issues remain, the decision of the Postal Service Board of Contract Appeals to deny interest to petitioner on its claims is, for the reasons stated above,

AFFIRMED.

---

**15.** We do not have before us and do not consider the question whether post-act claims may or may not be severed into separate quantum and interest "claims."

**16.** In *Brookfield Constr. Co. v. United States,* 228 Ct.Cl. ——, 661 F.2d 159 (1981), we held that the act only envisioned the payment of interest from the effective date of the act, March 1, 1979.